## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**GEORGIA DOUGLAS,**

    *Plaintiff,*

    v.

**COLUMBIA DEBT RECOVERY, LLC,** *d/b/a* **GENESIS CREDIT, NATIONAL CREDIT SYSTEMS, INC., EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., PROFESSIONAL DEBT MEDIATION INC., JOEL LACKEY**; **and TRANS UNION LLC,**

    *Defendants.*

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, GEORGIA DOUGLAS ("**Ms. Douglas**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, COLUMBIA DEBT RECOVERY, LLC, *doing business as* GENESIS CREDIT ("**Columbia**"), NATIONAL CREDIT SYSTEMS, INC ("**NCS**"), EQUIFAX INFORMATION SERVICES, LLC ("**Equifax**"), EXPERIAN INFORMATION SOLUTIONS, INC. ("**Experian**"), PROFESSIONAL DEBT MEDIATION INC. ("**PDM**"); JOEL LACKEY ("**Lackey**"), and TRANS UNION LLC ("**Trans Union**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. Douglas against all Defendants for violations of the ***Fair Credit Reporting Act***, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and against PDM, NCS, and Columbia only for violations of the ***Fair Debt Collection Practices Act***, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and ***Florida's Consumer Collection Practices Act*** § 559.55, Fla. Stat., *et seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 USC 1692k(d), and the FCCPA, § 559.77(1), Fla. Stat.

3.      Defendants are subject to the provisions of the FDCPA, the FCCPA, and the FCRA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4.      Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Ms. Douglas

5.      **Ms. Douglas** is a natural person residing in the City of Davenport, Polk County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8), Fla. Stat.

## Equifax

6.     Equifax is a Georgia limited liability company with a principal business address of 1550 Peachtree St. NW, Atlanta, GA 30309.

7.     Equifax is registered to do business in the State of Florida, and its Florida registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

## Experian

8.     **Experian** is an Ohio corporation with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

9.     Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

## Trans Union

10.    Trans Union is a Delaware limited liability company with a principal business address of 555 West Adams Street, Chicago, IL 60661.

11.    Trans Union is registered to do business in the State of Florida and its Florida registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

12.    Equifax, Experian, and Trans Union are all *Consumer Credit Reporting Agencies* ("**CRAs**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, they regularly engages in the practice of assembling or evaluating consumer credit

information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

### Columbia

13.    Columbia is a Washington limited liability company with a principal business address of 906 SE Everett Mall Way, Suite 301, Everett, WA 98208.

14.    Columbia is registered to do business in the State of Florida and its Florida registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

15.    Columbia is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

16.    Columbia is licensed as a *Consumer Collection Agency* ("CCA") by the Florida Office of Financial Regulation, holding license number CCA9904496.

17.    As a licensed CCA, Columbia knows its obligations under the FDCPA and FCCPA.

### PDM

18.    PDM is a Florida Profit Corporation with a principal business address of 8657 Baypine Road, Suite 301, Jacksonville, FL 32256.

19.    PDM is registered to do business in the State of Florida and its Florida registered agent is Rohan Kissoonlal.

20.    PDM is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

21.    PDM is licensed as a *Consumer Collection Agency* ("CCA") by the Florida Office of Financial Regulation, holding license number CCA9900729.

22.    As a licensed CCA, PDM knows its obligations under the FDCPA and FCCPA.

## NCS

23.    NCS is a Georgia corporation with a principal business address of 1775 The Exchange SE, Suite 300, Atlanta, GA 30339.

24.    NCS is registered to do business in the State of Florida and its Florida registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

25.    NCS is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

26.     NCS is licensed as a *Consumer Collection Agency* ("CCA") by the Florida Office of Financial Regulation, holding license number CCA0900180.

27.     As a licensed CCA, NCS knows its obligations under the FDCPA and FCCPA.

### Lackey

28.     Lackey is a natural person and is believed to be a citizen of Georgia.

29.     Lackey is believed to reside at 1311 Pebble Creek Road, Marietta, GA 30067.

30.     Lackey is the President of NCS.

31.     Lackey is involved in the day-to-day operations of NCS, and is responsible for the determination of, and implementation of, the policies and procedures of NCS.

32.     Lackey is responsible for reviewing any and all regulations affecting NCS, or alternatively, is responsible for hiring personnel to ensure NCS is in compliance with those regulations.

### FACTUAL ALLEGATIONS

### The Alleged Debts

33.     Ms. Douglas has lived at her current apartment in Davenport, Florida for the last six years, and has not rented any other apartments simultaneously.

34.     Ms. Douglas has at no point authorized anyone to use her name and personally identifying information to rent or lease any apartment, or anything whatsoever.

35.    In a period of two weeks in November and December 2022, an unknown individual or individuals rented two apartments Davenport, Florida and one in Orlando using Ms. Douglas's name and personal information.

36.    In each instance, it appears the criminal(s) pretending to be Ms. Douglas failed to pay rent and/or caused damage to the rental units, resulting in unpaid debts ranging from $4,795 to $11,920.

37.    In each instance, the landlord later hired a third-party debt collection agency to collect the balances purportedly owed "by" Ms. Douglas.

38.    In each instance, the third-party debt collectors reported the unpaid balances to several nationwide CRAs including defendants Equifax, Experian, or Trans Union:

a)    In or around May 2023 Columbia Debt Recovery started reporting to Experian that Ms. Douglas allegedly owed $11,920 (the "**Columbia Debt**" or "**Alleged Columbia Debt**") to The Arbors at Maitland Summit ("**Arbors**"), an apartment complex located in Orlando, concerning rent and other charges Ms. Douglas supposedly failed to pay between December 13, 2022 and March 31, 2023. **SEE PLAINTIFF'S EXHIBIT A.**

b)    In or around March 2023, NCS started reporting to Experian and Equifax that Ms. Douglas allegedly owed $10,780 (the "**NCS Debt**" or "**Alleged NCS Debt**") to Springs at Posner Park Apartments ("**Springs**"), an apartment complex located in Davenport, FL concerning rent and other

charges Ms. Douglas supposedly failed to pay between December 9, 2022 and February 16, 2023. **SEE PLAINTIFF'S EXHIBIT A.**

c) In or around April 2023, PDM started reporting to Trans Union that Ms. Douglas allegedly owed $4,795 (the "**PDM Debt**" or "**Alleged PDM Debt**") to Lake House Apartments ("**Lake House**"), an apartment complex located in Davenport, Florida concerning rent and other charges Ms. Douglas supposedly failed to pay between November 29, 2022 and March 14, 2023 ("Alleged Columbia Debt", "Alleged NCS Debt", and "Alleged PDM Debt" are collectively referred to as "**Alleged Debts**"). **SEE PLAINTIFF'S EXHIBIT A.**

39.     Thus, the three different apartments were all rented within 14 days of each other in various locations around the state of Florida.

40.     The Alleged Debts arose from services which were primarily for family, personal, or household purposes, specifically rent and other charges for what was alleged to be Ms. Douglas's primary home and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5).

41.     Ms. Douglas disputes owing the Alleged Debts, as she did not rent any of the three above-stated apartments or authorize anyone to do so on her behalf.

42.     In May 2024, after reviewing her credit reports and finding three different apartment debts simultaneously reported to her credit history, Ms. Douglas filed a police report ("**Police Report**") with the Davenport Police Office about the fraudulent

use of her identity to obtain the Arbor, Springs, and Lake House apartments. **SEE PLAINTIFF'S EXHIBIT B.**

### Ms. Douglas' Disputes of the Alleged Debts

43.    In October 2025, Ms. Douglas disputed the Columbia and NCS tradelines[1] to Experian, the NCS and Columbia tradelines to Equifax, and the PDM, Columbia, and NCS tradelines to Trans Union, stating the reported accounts were fraudulent and the result of identity theft.

44.    Ms. Doulgas clearly stated in each dispute that she did not live at any of the three apartment complexes, that the charges were fraudulent and the result of identity theft, and that the theft had been reported to law enforcement. Ms. Doulgas included the relevant information concerning her Police Report, including the report number and contract information for the Davenport Police Department.

45.    Experian, upon receipt of Ms. Douglas' dispute, sent Columbia and NCS an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR, asking Columbia and NCS to make a reasonable investigation into the dispute.

46.    Columbia and NCS each responded to the ACDV, indicating that its tradeline was accurate and continued reporting the Alleged Debt to Experian.

---

[1] A "tradeline" is a common credit reporting term concerning a record of a single credit account (e.g. credit card, mortgage, or collection balance) furnished to a CRA detailing the account's activity, status, balance, payment history, dates, etc.

47.     Equifax, upon receipt of Ms. Douglas' dispute, sent Columbia and NCS an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR, asking Columbia and NCS to make a reasonable investigation into the dispute.

48.     Columbia and NCS each responded to the ACDV, indicating that its tradeline was accurate and continued reporting the Alleged Debt to Equifax.

49.     Trans Union, upon receipt of Ms. Douglas' dispute, sent PDM and NCS an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR, asking PDM and NCS to make a reasonable investigation into the dispute.

50.     Columbia, PDM and NCS each responded to the ACDVs, indicating that their tradeline data had been "verified as accurate" and should continue to be reported by Trans Union.

51.     Columbia, NCS, and PDM are large debt collectors and receive many disputes concerning apartment debts which it reports to CRAs, including a good number which are the result of identity theft.

52.     Despite this, upon information and belief, Columbia, NCS, and PDM each simply rubber-stamped the ACDVs as "accurate" after making a quick verification of the data in the files of the CRAs against the data in their own internal systems.

53.     Columbia, NCS, and PDM thus failed to conduct a reasonable investigation into Ms. Douglas' dispute, as any reasonable investigation would have

determined that the account did not belong to Ms. Douglas and was the product of identity theft.

54.    The CRAs also failed to make a reasonable investigation into Ms. Douglas's dispute.

55.    Upon receipt of the ACDV responses, Experian, Trans Union and Equifax simply utilized their automated systems which made rudimentary checks of tradeline data between what Columbia, PDM and/or NCS had reported and the data contained in the CRA's own file on Ms. Douglas, *e.g.*, her name, address, date of birth, and Social Security number.

56.    Such a policy is practically a recipe for an unreasonable investigation of identity theft, as it is almost axiomatic that using a date of birth and Social Security number to confirm the identity of an accountholder whose identity has been stolen will result in a false positive.

57.    Each of the CRAs could easily, readily, and objectively verify that the information reported by NCS, PDM and Columbia was not accurate since Ms. Douglas provided the name of the law enforcement agency she reported the identity theft to, the report number, the agency's contact information, and so on.

58.    Moreover, contained within the files of each CRA were dozens of other tradelines from other creditors of Ms. Douglas, every one of which consistently reported her real address in Davenport.

59.     Beyond this, the apartment debts were all incurred within a very short period of time of each other, as reflected by the "Date of First Delinquency" ("DOFD") information reported in each tradeline.

60.     Trans Union thus verified all three apartment debts as belonging to Ms. Douglas, despite each of the apartment debts having near-identical DOFDs, a large number of other creditors reporting her address as not changing, constantly, and the fact it would incredibly unusual, to say the least, for a person to rent three different apartments and then default on them all simultaneously. Combined with the fact Ms. Douglas provided a police report number, date, and other information, no objectively reasonable investigation would have determined that Ms. Douglas was *not* the victim of identity theft.

61.     Experian and Equifax had the same advantages as Trans Union, with the exception they each had two, and not three, apartment debts in their credit files on Ms. Douglas.

62.     Despite the fact each CRA could have, with little time or cost, determined the apartment debts were likely the result of identity theft and deleted them from their files, the CRAs simply relied exclusively on the various debt collection agencies to begin, as well as conclude, their "investigations."

63.     For at least the last 40 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary. The CRA must make some independent investigation of its own. "Merely reporting

whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

64.    If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

65.    Experian, in particular, had reason to know NCS was not reliable, including the fact Experian has been a co-defendant in multiple lawsuits involving NCS, including *Ward v. Nat'l Credit Sys., Inc.,* 2024 U.S. Dist. LEXIS 100235, awarding $500,000 of damages to a consumer for violations of the FCRA.

66.    Indeed, in Ward, NCS argued it was not required to resolve "legal disputes" which include identity theft and thus had no requirement to investigate a consumer's identity theft claims.

67.    It is the definition of the word "unreasonable" for Experian to expect NCS to properly investigate Ms. Douglas's dispute concerning identity theft when Experian knew it was NCS's policy not to investigate such disputes, and then to rely almost exclusively on this verification to determine accuracy.

68.    Had Experian, or Equifax or Trans Union, made any meaningful investigation of its own, it would have quickly determined the Columbia, NCS and/or

PDM tradelines could not be verified as accurate and removed it from Ms. Douglas's file.

69.     Each of the CRAs have been Co-Defendant's with Columbia and PDM in FCRA, FDCPA, and FCCPA cases right here in Florida which should have provided enough doubt into the unreasonableness of their procedures to warrant an independent investigation.

70.     Subsequent disputes to Equifax and TransUnion in November 2025 concerning the NCS and Columbia tradelines resulted in the same series of events occurring: Equifax and Trans Union each sent ACDVs to NCS and Columbia, who both quickly responded the information had been, again, verified as accurate.

71.     A subsequent dispute to Experian in December 2025 concerning the NCS and Columbia disputes repeated a familiar pattern: Experian made no internal investigation and sent ACDVs to NCS and Columbia.

72.     While NCS continued to verify its information as accurate, Columbia responded that its information could not be verified and that its tradeline should be deleted.

73.     Columbia had no new information this time around; the fact Columbia was able to determine its reported information was not accurate the seventh time it was disputed establishes Columbia could have made the same determination the first time six times but failed to do so.

74.     Advantage Credit, Inc. on behalf of HomeAmerican Mortgage Co. requested a consumer report regarding Ms. Douglas from Equifax, Experian, and Trans Union on September 5, 2025.

75.     Experian's report regarding Ms. Douglas included the Columbia and NCS Alleged Debts.

76.     As a result, Ms. Douglas was unable to proceed with her application with the Advantage Credit, Inc for a mortgage.

77.     On January 14, 2026, Ms. Douglas filed an online dispute with Experian which contained the full Davenport Police Department Report. **SEE PLAINTIFF'S EXHIBIT B.**

78.     This report contained (i) appropriate proof of Plaintiff's identity; (ii) a copy of an identity theft report; (iii) Plaintiff's identification of the information that resulted from identity theft and fraud; and (iv) a statement by Plaintiff that the disputed information is not information relating to any transaction by Plaintiff.

79.     Ms. Douglas has hired this law firm to represent her in this matter and has assigned the firm her right to fees and costs.

**COUNT I**
**WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**
**NCS Only**

80.     Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

81.    NCS violated 15 U.S.C. § 1681s-2(b) when it failed, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as it contained numerous and substantial charges for repairs which even a cursory examination of the documentation purporting to substantiate the charges reveals to be problematic.

82.    NCS's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

83.    NCS's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

84.    Accordingly, pursuant to 15 U.S.C. § 1681n, NCS is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against NCS for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.     Such other relief that this Court deems just and proper.

**COUNT II**
**NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**
**NCS Only**
**In the Alternative to Count I**

85.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

86.    NCS violated 15 U.S.C. § 1681s-2(b) when it failed, on at least six separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as it contained numerous and substantial charges for repairs which even a cursory examination of the documentation purporting to substantiate the charges reveals to be problematic.

87.    NCS's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

88.    NCS owed Ms. Douglas a legal duty to reasonably investigate her disputes.

89.    NCS breached this duty when it verified its reported information as accurate, and without indicating Ms. Douglas disputed the information.

90.     NCS's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, NCS is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against NCS for:

a.      Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## COUNT III
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
## Columbia Only

91.     Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

92.     Columbia violated 15 U.S.C. § 1681s-2(b) when it failed, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as it contained numerous and substantial charges for repairs which even a cursory examination of the documentation purporting to substantiate the charges reveals to be problematic.

93.     Columbia's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

94.     Columbia's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

95.     Accordingly, pursuant to 15 U.S.C. § 1681n, Columbia is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Columbia for:

a.      The greater of statutory damages of $1,000 per incident or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.      Such other relief that this Court deems just and proper.

**COUNT IV**
**NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**
**Columbia Only**
**In the Alternative to Count III**

96.     Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

97.     Columbia violated 15 U.S.C. § 1681s-2(b) when it failed, on at least six separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as it contained numerous and substantial charges for repairs which even a cursory examination of the documentation purporting to substantiate the charges reveals to be problematic.

98.     Columbia's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

99.     Columbia owed Ms. Douglas a legal duty to reasonably investigate her disputes.

100.    Columbia breached this duty when it verified its reported information as accurate, and without indicating Ms. Douglas disputed the information.

101.    Columbia's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Columbia is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Columbia for:

a.      Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

### COUNT V
### <u>WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)</u>
### <u>PDM Only</u>

102.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

103.    PDM violated 15 U.S.C. § 1681s-2(b) when it failed, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as it contained numerous and substantial charges for repairs which even a cursory examination of the documentation purporting to substantiate the charges reveals to be problematic.

104.    PDM's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

105.    PDM's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

106.   Accordingly, pursuant to 15 U.S.C. § 1681n, PDM is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against PDM for:

a.   The greater of statutory damages of $1,000 per incident or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VI**
**NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)**
**PDM Only**
**In the Alternative to Count V**

107.   Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

108.   PDM violated 15 U.S.C. § 1681s-2(b) when it failed, on at least six separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Debt from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as it contained numerous and substantial charges for repairs which even a cursory

examination of the documentation purporting to substantiate the charges reveals to be problematic.

109.    PDM's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

110.    PDM owed Ms. Douglas a legal duty to reasonably investigate her disputes.

111.    PDM breached this duty when it verified its reported information as accurate, and without indicating Ms. Douglas disputed the information.

112.    PDM's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, PDM is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against PDM for:

a.    Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT VII**
**WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Experian Only**

113.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

114.    Experian violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into disputes of the NCS and Columbia tradelines by Ms. Douglas, since any reasonable investigation would have concluded that the NCS and Columbia tradelines could not be objectively verified as accurate, in light of the Police Report submitted by Ms. Douglas claiming identity theft, when the only "evidence" of accuracy Experian possessed was a single box clicked on an ACDV form marked "verified as accurate" and nothing else.

115.    Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

116.    Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

117.    Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT VIII
### NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Experian Only
### In the Alternative to Count VII

118.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

119.    Experian violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into disputes of the NCS and Columbia tradelines by Ms. Douglas, since any reasonable investigation would have concluded that the NCS and Columbia tradelines could not be objectively verified as accurate, in light of the Police Report submitted by Ms. Douglas claiming identity theft, when the only "evidence" of accuracy Experian possessed was a single box clicked on an ACDV form marked "verified as accurate" and nothing else.

120.    Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

121.    Experian owed Ms. Douglas a legal duty to reasonably investigate her disputes.

122.    Experian breached this duty when it verified the NCS and Columbia accounts as accurate, and without indicating Ms. Douglas disputed the information.

123.    Experian's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Experian for:

a.    Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT IX**
**WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Trans Union Only**

124.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

125.    Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into disputes of the NCS and PDM tradeline by Ms. Douglas, since any reasonable investigation would have concluded that the NCS and PDM tradeline could not be objectively verified as accurate, in light of the Police Report submitted by Ms. Douglas claiming identity theft, when the only "evidence" of accuracy Trans Union possessed was a single box clicked on an ACDV form marked "verified as accurate" and nothing else.

126.    Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

127.    Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

128.    Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT X
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### <u>Trans Union Only</u>
### <u>In the Alternative to Count IX</u>

129.   Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

130.   Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into disputes of the NCS tradeline by Ms. Douglas, since any reasonable investigation would have concluded that the NCS and PDM tradeline could not be objectively verified as accurate in light of the Police Report submitted by Ms. Douglas claiming identity theft, when the only "evidence" of accuracy Trans Union possessed was a single box clicked on an ACDV form marked "verified as accurate" and nothing else.

131.   Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

132.   Trans Union owed Ms. Douglas a legal duty to reasonably investigate her disputes.

133.   Trans Union breached this duty when it verified the NCS and PDM account as accurate, and without indicating Ms. Douglas disputed the information.

134.   Trans Union's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

### COUNT XI
### WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### <u>Equifax Only</u>

135.   Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

136.   Equifax violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into disputes of the NCS and Columbia tradeline by Ms. Douglas, since any reasonable investigation would have concluded that the NCS and Columbia tradeline could not be objectively verified as accurate, in light the Police Report submitted by Ms. Douglas claiming identity theft, when the only "evidence" of accuracy Equifax possessed was a single box clicked on an ACDV form marked "verified as accurate" and nothing else.

137.   Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

138.    Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

139.    Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Equifax for:

a.    The greater of statutory damages of $1,000 per incident (for a total of $2,000, based on information pled at the time of filing) or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT XII**
**NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Equifax Only**
**In the Alternative to Count XI**

140.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

141.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into disputes of the NCS and Columbia tradeline by Ms. Douglas, since any reasonable investigation would have concluded that the NCS and Columbia tradeline could not be objectively verified as accurate, in light the Police Report submitted by Ms. Douglas claiming identity theft, when the only "evidence" of accuracy Equifax possessed was a single box clicked on an ACDV form marked "verified as accurate" and nothing else.

142.   Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

143.   Equifax owed Ms. Douglas a legal duty to reasonably investigate her disputes.

144.   Equifax breached this duty when it verified the NCS and Columbia account as accurate, and without indicating Ms. Douglas disputed the information.

145.   Equifax's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Equifax is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Equifax for:

a.   Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT XIII
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2
### Experian Only

146.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

147.    Experian violated 15 U.S.C. § 1681c-2 by failing to block the tradeline that was identified by Plaintiff as information that resulted from an alleged identity theft within four (4) business days after receiving: (i) appropriate proof of Plaintiff's identity; (ii) a copy of an identity theft report; (iii) Plaintiff's identification of the information that resulted from identity theft and fraud; and (iv) a statement by Plaintiff that the disputed information is not information relating to any transaction by Plaintiff.

148.    Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

149.    Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Douglas.

150.    Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Douglas for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Douglas's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT XIV
### NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2
### Experian Only
### In the Alternative to Count XII

151.    Ms. Douglas hereby incorporates paragraphs 1 – 79 as if fully stated herein.

152.    Experian violated 15 U.S.C. § 1681c-2 by failing to block the tradeline that was identified by Plaintiff as information that resulted from an alleged identity theft within four (4) business days after receiving: (i) appropriate proof of Plaintiff's identity; (ii) a copy of an identity theft report; (iii) Plaintiff's identification of the information that resulted from identity theft and fraud; and (iv) a statement by Plaintiff that the disputed information is not information relating to any transaction by Plaintiff.

153.    Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

154.    Experian owed Ms. Douglas a legal duty to block the information that was identified as a result of identity theft.

155.    Experian breached this duty when it verified the NCS account instead of blocking the information.

156.    Experian's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Douglas for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Douglas respectfully requests this Honorable Court to enter judgment against Experian for:

a.    Ms. Douglas's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT XV
## VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.
## NCS Only

157.    Ms. Douglas adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

158.    NCS violated Section 559.72(9), Florida Statutes, when NCS asserted a debt was legitimate when it knew it was not, when it continued to attempt to collect the Debt from Ms. Douglas, despite detailed and meritorious dispute of accuracy.

159.    NCS is liable for the above-stated violations of the FCCPA, and Ms. Douglas is thereby entitled to actual damages, statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Ms. Douglas respectfully requests that this Honorable Court enter judgment against NCS for:

a.    Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to Section 559.77(2), Florida Statutes;

c.    Injunctive relief prohibiting NCS from trying to collect the bogus debt from Ms. Douglas;

d.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and

e.    Such other relief that this Court deems just and proper.

**COUNT XVI**
**VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**
**Columbia Only**

160.    Ms. Douglas adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

161.    Columbia violated Section 559.72(9), Florida Statutes, when Columbia asserted a debt was legitimate when it knew it was not, when it continued to attempt

to collect the Debt from Ms. Douglas, despite detailed and meritorious dispute of accuracy.

162.    Columbia is liable for the above-stated violations of the FCCPA, and Ms. Douglas is thereby entitled to actual damages, statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Ms. Douglas respectfully requests that this Honorable Court enter judgment against Columbia for:

a.  Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.  Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to Section 559.77(2), Florida Statutes;

c.  Injunctive relief prohibiting Columbia from trying to collect the bogus debt from Ms. Douglas;

d.  Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and

e.  Such other relief that this Court deems just and proper.

## COUNT XVII
## VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.
## PDM Only

163.    Ms. Douglas adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

164.    PDM violated Section 559.72(9), Florida Statutes, when PDM asserted a debt was legitimate when it knew it was not, when it continued to attempt to collect the Debt from Ms. Douglas, despite detailed and meritorious dispute of accuracy.

165.    Columbia is liable for the above-stated violations of the FCCPA, and Ms. Douglas is thereby entitled to actual damages, statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Ms. Douglas respectfully requests that this Honorable Court enter judgment against PDM for:

a.    Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to Section 559.77(2), Florida Statutes;

c.    Injunctive relief prohibiting Columbia from trying to collect the bogus debt from Ms. Douglas;

d.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and

e.    Such other relief that this Court deems just and proper.

### COUNT XVIII
### <u>VIOLATIONS OF THE FDCPA</u>
### <u>NCS Only</u>

166.    Ms. Douglas adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

167.    NCS violated 15 U.S.C. § 1692e and 1692e(10) when NCS used false, deceptive, and misleading representations in connection with the collection of a debt by reporting to at least three nationwide CRAs a $10,780 debt was owed when NCS knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

168.    NCS violated 15 U.S.C. § 1692e(2)(a) by using false representations about the character, amount, or legal status of a debt by reporting to at least three nationwide CRAs a $10,780 debt was owed when NCS knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

169.    NCS violated 15 U.S.C. § 1692e(8) by communicating credit information which they knew, or should have known, to be false when NCS reported information to reporting to at least three nationwide CRAs a $10,780 debt was owed when NCS knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

170.    NCS violated 15 U.S.C. § 1692f by using unfair methods to collect a debt, when NCS intentionally reported information to the Big Three CRAs that it knew was not accurate, and then illegally parked the Debt on Ms. Douglas's credit report, knowing this would adversely affect Ms. Douglas' credit reports and scores, in order to pressure her to pay a debt which was not owed and likely fabricated.

**WHEREFORE,** Ms. Douglas respectfully requests that this Honorable Court enter judgment against NCS for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

## COUNT XIX
## VIOLATIONS OF THE FDCPA
## Columbia Only

171.    Ms. Douglas adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

172.    Columbia violated 15 U.S.C. § 1692e and 1692e(10) when Columbia used false, deceptive, and misleading representations in connection with the collection of a debt by reporting to at least three nationwide CRAs a $11,843 debt was owed when Columbia knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

173.    Columbia violated 15 U.S.C. § 1692e(2)(a) by using false representations about the character, amount, or legal status of a debt by reporting to at least three nationwide CRAs a $11,843 debt was owed when Columbia knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

174.    Columbia violated 15 U.S.C. § 1692e(8) by communicating credit information which they knew, or should have known, to be false when Columbia reported information to reporting to at least three nationwide CRAs a $11,843 debt was owed when Columbia knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

175.    NCS violated 15 U.S.C. § 1692f by using unfair methods to collect a debt, when NCS intentionally reported information to the Big Three CRAs that it knew was not accurate, and then illegally parked the Debt on Ms. Douglas's credit report, knowing this would adversely affect Ms. Douglas' credit reports and scores, in order to pressure her to pay a debt which was not owed and likely fabricated.

**WHEREFORE,** Ms. Douglas respectfully requests that this Honorable Court enter judgment against Columbia for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

## COUNT XX
## VIOLATIONS OF THE FDCPA
## PDM Only

176.    Ms. Douglas adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

177.    PDM violated 15 U.S.C. § 1692e and 1692e(10) when PDM used false, deceptive, and misleading representations in connection with the collection of a debt by reporting to at least three nationwide CRAs a $4,795 debt was owed when PDM knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

178.    PDM violated 15 U.S.C. § 1692e(2)(a) by using false representations about the character, amount, or legal status of a debt by reporting to at least three nationwide CRAs a $4,795 debt was owed when PDM knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

179.    PDM violated 15 U.S.C. § 1692e(8) by communicating credit information which they knew, or should have known, to be false when PDM reported information to reporting to at least three nationwide CRAs a $4,795 debt was owed when PDM knew, or should have known, the debt was a result of identity theft which Ms. Douglas was the victim and she did not owe the debt.

180.    PDM violated 15 U.S.C. § 1692f by using unfair methods to collect a debt, when PDM intentionally reported information to the Big Three CRAs that it knew was not accurate, and then illegally parked the Debt on Ms. Douglas's credit

report, knowing this would adversely affect Ms. Douglas' credit reports and scores, in order to pressure her to pay a debt which was not owed and likely fabricated.

**WHEREFORE,** Ms. Douglas respectfully requests that this Honorable Court enter judgment against PDM for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on **February 26, 2026,** by:

**SERAPH LEGAL, P.A.**

*/s/ Christian Cok*
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@SeraphLegal.com
Thomas M. Bonan, Esq.
Tbonan@Seraphlegal.com
3505 E Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-321-2349
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A     Plaintiff's Alleged Debt Tradelines - Excerpts

B     Plaintiff's Police Report